IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-01343-MSK

TOMMIE CHARLES BRADLEY, JR.,

      Applicant,

v.

HOYT BRILL, and
JOHN W. SUTHERS, The Attorney General of the State of Colorado,

      Respondents.

_____

## ORDER
_____

    **THIS MATTER** comes before the Court pursuant to Tommie Charles Bradley, Jr.'s

Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Application") (#2).[1]

Respondents filed a Pre-Answer Response (# 11) and an Answer (#32).  Mr. Bradley filed a

Reply to States [sic] Answer (Reply) (#36).

## BACKGROUND

    Mr. Bradley was charged in El Paso County, Colorado District Court with multiple

offenses arising out of a shooting that occurred on March 31, 1996.  The Colorado Court of

Appeals summarized the facts of Mr. Bradley's underlying criminal case as follows:

> In March 1996, Bradley; his girlfriend, Tracy Batts; . . .
> Kevin Kauhaahaa; and Kevin's girlfriend were at Pink E's Bar in
> Colorado Springs when a fight broke out in front of the bar.
> Bradley was involved in the fight, and, after the bouncers stopped
> it, Bradley obtained a gun from his car and returned to the bar.  At

_____

[1]The designation (#_) refers to docket numbers which the Court's electronic filing system has
assigned to documents filed in this case.

trial, there was testimony that he fired two shots into the air and
that other gunshots were fired into the crowded bar, narrowly
missing many people, including one bouncer.  Bradley and his
companions left the scene soon thereafter.

A short distance from the bar, the police stopped Bradley's
car.  The police found a gun in Batts's purse and bullet casings in
the vehicle.  A bouncer positively identified Bradley as the person
who fired shots into the bar, and Bradley was arrested.  After
further investigation, the police determined that the bullet shell
casings found at the bar and in Bradley's vehicle were fired from
the same gun but not the gun found in Batts's purse.  Additionally,
neither Bradley not Batts tested positive for gunshot residue.

In January 1997, a jury found Bradley guilty of attempted
first degree murder by extreme indifference and crime of violence.
He was, however, acquitted of possession of a defaced firearm,
based upon the gun found in Batts's purse.

(#8-14 at 3-6).  After his conviction, Mr. Bradley was sentenced to 30 years in the Colorado

Department of Corrections.

Mr. Bradley asserts six claims in this Application:  (1) that his constitutional rights were

violated when the trial judge denied his challenge for cause to a juror during voir dire, (2) that

his constitutional rights were violated when the trial judge denied his motion for mistrial after a

juror revealed that her daughter had been present at the scene of the crime, (3) that his trial

counsel provided ineffective assistance in violation of his Sixth and Fourteenth Amendment

rights by failing to consult with a ballistics expert, (4) that his trial counsel provided ineffective

assistance in violation of his Sixth and Fourteenth Amendment rights by failing to move to

suppress the gun found in Ms. Batts' purse, (5) that his trial counsel provided ineffective

assistance in violation of his Sixth and Fourteenth Amendment rights by failing to call Ms. Batts

as a witness, and (6) that his trial counsel provided ineffective assistance in violation of his Sixth

and Fourteenth Amendment rights by failing to conduct a reasonable investigation after a juror

revealed that her daughter had been present at the crime scene.

Respondents have conceded that the Application is timely.  Although the Court previously ruled that Mr. Bradley's claims were exhausted in state court, *see* September 15, 2009, Order Drawing Case to District Judge and to Magistrate Judge (#13), upon further briefing and review of the entire state court record, the Court concludes that the sixth claim was not exhausted, as discussed in Part B.6. below.

## ANALYSIS

### A.  Standard of Review

A habeas application under 28 U.S.C. § 2254 examines whether the applicant's state court conviction was obtained in violation of provisions of the United States Constitution.  28 U.S.C. § 2254(d); *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  An applicant is entitled to relief under § 2254 only if he or she can establish that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or the that state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court."  28 U.S.C. § 2254(d).  A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or if it "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court's]."  *Williams v. Taylor*, 529 U.S. 362, 404 (2000).  A state court decision is "an unreasonable application of" clearly established federal law where it is "objectively unreasonable," meaning that "most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law."  *Maynard*

*v. Boone*, 468 F.3d 665, 671 (10th Cir. 2006).  As a condition for obtaining federal habeas relief, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

Factual findings by the state court are presumed to be correct, and the habeas petitioner has the burden of rebutting that presumption by clear and convincing evidence.  28 U.S.C. §2254(e)(1).

Pursuant to 28 U.S.C. § 2254(b)(1), a habeas petition may not be granted unless the petitioner has exhausted his or her state court remedies, "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  To provide the State with the necessary opportunity, the prisoner must fairly present his claim to each appropriate state court . . . , thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quotations and citations omitted).  "Fair presentation of a prisoner's claim to the state courts means that the substance of the claim must be raised there."  *Patton v. Mullin*, 425 F.3d 788, 809 n.7 (10th Cir. 2005).

Because Mr. Bradley appears pro se, the Court construes his filings liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, the Court does not act as his advocate.  *See Hall v. Bellmon*, 935 F.2d 1106, 110 (10th Cir. 1991).

**B.  Claims**

1. <u>Juror Challenge for Cause</u>

In his first claim, Mr. Bradley asserts that his constitutional rights were violated when the trial judge denied his challenge for cause to a juror during voir dire.  The Court has previously noted in this case that while Mr. Bradley's first claim cites to the Fourth Amendment, it is based on an alleged violation of due process.  (*See* #13 at 6).  Further, the Sixth Amendment expressly guarantees the right to an impartial jury in a criminal trial.  *See* U.S. CONST. amend. VI ("[i]n all criminal prosecutions, the accused shall enjoy the right to a . . . public trial, by an impartial jury.").

Mr. Bradley asserts that juror Gary Parsons' statements during voir dire revealed enmity or bias toward him which supported a challenge for cause.  Mr. Bradley's trial counsel, Sean Kaufman, had the following discussion with Mr. Parsons during voir dire:

> MR. KAUFMAN:  Okay.  Well, let's get right down to it again, and I guess you had a family member that was a victim of a murder of some kind?
> MR. PARSONS:  Yes.
> MR. KAUFMAN:  I know you were close to this person and I just want to know whether or not guns were involved?
> MS. PARSONS:  Yes, he was shot in the back.
> MR. KAUFMAN:  Okay.  Was it a domestic, was it between friends, was it strangers?
> MR. PARSONS:  It was between two strangers.  He was in a bar having a drink with a friend and when he left the bar he spoke to someone and on the way out of the door the guy came behind him and shot him.
> MR. KAUFMAN:  Okay.  When you hear attempted murder here, did you connect the two things in your mind?
> MR. PARSONS:  I suppose I did, yeah.
> MR. KAUFMAN:  Okay.  And I take it that -- well, was the person -- I've never been to Wichita Falls, Texas, but is there a race problem there?  Was the guy that shot him black?
> MR. PARSONS:  No, it was Hispanic.
> MR. KAUFMAN:  Okay.  I have got to ask you the next question, and that is this.  I'm sure that if you were ordered to you would do

anything the Court told you to do, but what I want to ask you is, in your mind as you think about things in this case and hearing the evidence, whether or not your feelings about your family member would come into play in your mind?

MR. PARSONS:  Well, I would like to think that it wouldn't.  I don't know.

MR. KAUFMAN:  Okay.  I'm going to press you a little bit further.

Let me give you a piece of evidence in this case, about people in the bar and there being a dispute and that is being pretty close to what I hear the situation of your family member was, and so I am going to ask you just based on the identical nature of these two, do you think that there is a curtain that might drop down or a good possibility of something dropping down in your mind and saying, "God, I can't hear this, I don't want to be here," in the middle of the trial, or, "I can't be fair"?

MR. PARSONS:  I think I can be fair.

MR. KAUFMAN:  Okay.  If I were to walk over here and tell you that Tommie Bradley was at the bar with a bunch of people and there was gunplay, or at least someone shot a gun somewhere, and I want to know, can you be fair to him?

MR. PARSONS:  Yes.

. . .

MR. KAUFMAN:  Okay.  Just so I'm clear, and then I will sit down and I promise, is there anything about the prior events in your life that would cause a barrier to come down between you and the balance of the evidence in this case that would cause you any problems, and you can promise us that now?

MR. PARSONS:  I think so, yes.

MR. KAUFMAN:  Can you be more sure than "think so"?

MR. PARSONS:  I don't know that I can do that.  I suppose, yeah, I can do it.

MR. KAUFMAN:  Okay.

All right, Judge.

We would ask the Judge to consider a challenge based upon cause.

THE COURT: The challenge is denied.

Jan. 13, 1997, Transcript of Proceedings at 118-121.  Mr. Bradley's counsel had exercised all

of his peremptory challenges at that point, *see id.* at 99, 102, 107, 111, 116, and Mr. Parsons

remained on the jury.

     Under federal law, a juror should be dismissed for cause based on actual bias if his

"views would prevent or substantially impair the performance of his duties as a juror in

accordance with his instructions and his oath."  *Wainwright v. Witt*, 469 U.S. 412, 424 (1985).

The question on habeas review is "whether there is fair support in the record for the state courts'

conclusion that the juror[ ] . . . would be impartial."  *Patton v. Yount*, 467 U.S. 1025, 1038

(1984).  The determination of juror bias is essentially one of demeanor and credibility, *see id.*,

and thus "the state trial judge's determination [of a challenge for cause] is statutorily accorded a

presumption of correctness which can only be rebutted by clear and convincing evidence."  *Hale

v. Gibson*, 227 F.3d 1298, 1318 (10th Cir. 2000).

     On direct appeal, the Colorado Court of Appeals concluded that the trial court had not

abused its discretion in denying the challenge for cause.  The court stated:

> A trial court must sustain a challenge for cause of a
> prospective juror if there exists a state of mind in the juror
> evincing enmity or bias toward the defendant or the state.
> However, if the court is satisfied that the prospective juror will
> render an impartial verdict according to the law and the evidence
> submitted at trial, that person should not be disqualified.  Section
> 16-10-103(1)(j), C.R.S. (1998); *see People v. Schmidt*, 885 P.2d
> 312 (Colo. App. 1994).
>
> Because the trial court is in the best position to assess by
> personal observation the attitude and state of mind of a potential
> juror, *People v. Veloz*, 946 P.2d 525 (Colo. App. 1997), it has
> broad discretion in ruling on challenges for cause; its decision will
> not be overturned absent a clear abuse of discretion.  *People v.
> Fuller*, 791 P.2d 702 (Colo. 1990).
>
> Defendant contends that, because the juror did not
> "promise" he would not be affected by his "feelings" about the

> death of a close relative who had been shot in the back by a
> stranger at a bar in Texas, the juror had a state of mind that
> "evinced enmity or bias."
>
> However, the juror properly refused to engage in
> speculation and emphasized that he could be fair and impartial.
> *See People v. Veloz*, *supra*.  The trial court was in the best position
> to evaluate both the substance of the juror's responses to the
> questions on *voir dire* and his demeanor.  Thus, we find no abuse
> of discretion in the trial court's denial of defendant's challenge for
> cause.

(#8-5 at 2-3).

Although the Court of Appeals cited to no federal authority in support of its conclusion, a

state court decision which relies solely on state law is not "contrary to" clearly established U.S.

Supreme Court law for purposes § 2254 "so long as neither the reasoning nor the result of the

state-court decision contradicts [it]."  *Early v. Packer*, 537 U.S. 3, 8 (2002).  The Court of

Appeals identified support in the record for the trial judge's ruling, namely, the juror's statement

that he thought that he could be fair to Mr. Bradley.  Further, the court properly deferred to the

trial judge's ruling because he "was in the best position to evaluate both the substance of the

juror's responses to the questions on voir dire and his demeanor."  Thus, the legal principles

applied by the Court of Appeals are consistent with established U.S. Supreme Court law

concerning actual juror bias, and neither the court's reasoning nor its result contradict that law.

In his Reply, Mr. Bradley contends that the "emotional" statements by the juror, and the

juror's statement that he only "thought" or "supposed" that the prior events would not pose

problems for him, were enough to establish bias.  However, the juror stated unequivocally that

he could be fair to Mr. Bradley, and the trial judge was in the best position to determine whether

and to what degree the juror's statements were "emotional."  Although Mr. Bradley also argues

8

that there was "a close nexus of race" between the shooting of the juror's relative and the facts of Mr. Bradley's case, Mr. Parsons did not indicate that there was any racial component to the shooting of his relative; rather, he simply answered when asked whether the person who had shot his relative was black.  The pertinent portions of the record, taken as a whole, reflect that the juror believed that he could be fair to Mr. Bradley despite the event involving his relative.  The record reasonably supports a finding of no actual juror bias.

It is unclear whether Mr. Bradley's first claim is asserting implied bias in addition to actual bias.  The implied bias doctrine contemplates that although a juror "might honestly believe she can be impartial, she nevertheless may have 'such a close connection to the circumstances at hand that bias must be presumed.'"  *Gonzales v. Thomas*, 99 F.3d 978, 987 (10th Cir. 1996) (quoting *United States v. Scott*, 854 F.2d 697, 699 (5th Cir. 1988)).  The doctrine is reserved for those "'extreme' and 'exceptional' circumstances that 'leav[e] serious question whether the trial court . . . subjected the defendant to manifestly unjust procedures resulting in a miscarriage of justice.'"  *Id.* (quoting *Smith v. Phillips*, 455 U.S. 209, 222 & n.* (1982) (O'Connor, J., concurring)).  "[T]he concept of implied or presumed bias arises from 'situations in which the circumstances point so sharply to bias in a particular juror that even his own denials must be discounted.'"  *Id.* (quoting *United States v. Nell*, 526 F.2d 1223, 1229 n.8 (5th Cir. 1976)).  Such situations "might include a revelation that a juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction."  *Smith*, 455 U.S. at 222 (O'Connor, J., concurring).  Implied bias also may be found "on the basis of similarities between the juror's experiences and the facts giving rise to the trial."

9

*Gonzales*, 99 F.3d at 987.  Whether a juror was impliedly biased is a question of law which is dependent "on an objective evaluation of the challenged juror's experiences and their relation to the case being tried."  *Id*.

Here, Mr. Parsons had no personal involvement in the crime at issue and no association with any of the parties in the case.  His relative had been shot in an unrelated incident in another state, and there is no indication that Mr. Parsons witnessed or was otherwise directly involved in that incident.  Aside from the fact that both shootings took place in bars, there is nothing indicating any similarity or connection between the two crimes whatsoever.  Mr. Parsons was not impliedly biased as a matter of law.

Because the Court of Appeals' conclusion was not contrary to or an unreasonable application of clearly established federal law, Mr. Bradley is not entitled to relief on his first claim.

### 2.  Denial of Motion for Mistrial

Claim two alleges that Mr. Bradley's constitutional rights were violated when the trial judge refused to grant a motion for mistrial after a juror disclosed that her daughter had been present at the scene of the crime.  The claim cites to the Fourth Amendment; however, it is grounded in due process, and also appears to assert a violation of the Sixth Amendment right to an impartial jury.

On the morning of the second day of trial, the trial judge was informed that juror Nancy Wiggins had recalled that her daughter had been present at a shooting at Pink E's bar.  The juror, the judge, and counsel proceeded to have the following discussion:

> THE COURT:  My clerk brought to my attention your comment that you evidently made to her this morning --
> MS. WIGGINS:  Yes.

THE COURT:  -- that when you went home last night you recall that, I believe it was, your daughter --

MS. WIGGINS:  Yes.

THE COURT:  -- was at the bar in question on the night?

MS. WIGGINS:  Well, unless there are numerous other occasions up there.  I have no idea, but, yes, she was at Pink E's at the time when something happened.

THE COURT:  When she hear [sic] gunshots?

MS. WIGGINS:  Yes.  She was actually almost --

THE COURT:  Do you know if it was, in fact, the same incident?

MS. WIGGINS:  Unless there would be numerous incidents of that nature, it appeared to be approximately the same time.  It was after hours, or after as they call it.

She was in her friend's truck and so they did not see anything.  She only heard gunshots.

THE COURT:  Did they --

MS. WIGGINS:  And then they peeled out, so --

THE COURT:  Did she describe the incident?

MS. WIGGINS:  Beyond that, no.  I just talked to her the next day on the phone and she said that they had run into an incident up there and it kind of freaked her out, so she ducked in the truck and as soon as they could, they left.

THE COURT:  Did she tell you anything other than that?

MS. WIGGINS:  No.

THE COURT:  Did you attempt to find out any further who she thought had fired gunshots?

MS. WIGGINS:  No, sir.

THE COURT:  Or the circumstances under which the gunshots were fired?

MS. WIGGINS:  No, she said she thought there had been a fight, but she did not know absolutely.

THE COURT:  And no color description of any person or anything else read into it?

MS. WIGGINS:  I am sorry, I don't know.

THE COURT:  Well, given that she didn't appear to transmit much information to you, would you then be able to confine yourself to what is presented in this trial in these proceedings and base your verdict upon that?

MS. WIGGINS: Well, of course, I would have to do so.

THE COURT:  So whatever she might have said to you will not influence your verdict any?

MS. WIGGINS:  No, sir.  It would not.

THE COURT:  I understand there was an emotional context to the event, but the fact that she may have been there at the same time?

MS. WIGGINS:  No, sir.

THE COURT:  All right. Ms. Gibbons, do you have any brief questions you want to ask the juror about this?

MS. GIBBONS [Plaintiff's counsel]:  Did just the fact that something happened out there while your daughter was out there appall you so much that you would convict someone because you are so appalled at the situation?

MS. WIGGINS:  No, no.

MS. GIBBONS:  Okay.

MS. WIGGINS:  This town has changed a lot, and I have lived here a long time and it doesn't really freak me out.  I mean, it is just what happens when they were in the truck and they heard gunshots and they left from there and she just mentioned it the next day, that was her conversation to me.

MS. GIBBONS:  So, you feel you could be impartial sitting on this jury?

MS. WIGGINS:  Yes, I do.

MS. GIBBONS:  No further questions, Your Honor.

THE COURT:  Mr. Kaufman, do you have any questions for the juror?

MR. KAUFMAN:  Ma'am, you said they told you there was a fight or there had been a fight prior to that?

MS. WIGGINS:  She said there had been a fight prior to the gunshots and they went to the truck and ducked down in the truck and left.

MR. KAUFMAN:  Okay.  So the situation was that she didn't watch the fight?

MS. WIGGINS:  I think she was already outside.

MR. KAUFMAN:  Okay.  And apparently they had enough notice about the gunshots to duck down, and stuff, in the truck?

MS. WIGGINS:  Um-hmmm.

MR. KAUFMAN:  And, so, you and your daughter wasn't concerned I guess about being shot?

MS. WIGGINS:  They ducked down.  I guess when you hear a shot that is what you do.  I guess that is the sort of thing that happens at bars at 2:00 or 3:00 in the morning.

MR. KAUFMAN:  Did she tell you anything about the fight, how it started, whether it started inside or outside the bar?

MS. WIGGINS:  No.

MR. KAUFMAN:  And she called you the next day, it was the day after?

MS. WIGGINS:  We talked quite often, so there wasn't anything unusual. She said she had a frightening experience.  It was she had heard gunshots and they ducked down and then they left.

MR. KAUFMAN:  And she did not describe any persons?

MS. WIGGINS:  She did not describe any persons to me at all that may or may not have been involved.  I have no idea.  I did think it was worth mentioning because I wanted to be fair to all of you.

MR. KAUFMAN:  Now, you had a friend that was hurt in basically the same neighborhood?

MS. WIGGINS:  No, not really.  That was on Galley.  My neighbor was quite elderly.

MR. KAUFMAN:  Did you know of any of the circumstances surrounding that?

MS. WIGGINS:  No, from what you told us yesterday.  I'm sorry, I don't always read the Gazette Telegraph.

MR. KAUFMAN:  All right.  Well, thank you, very much for your honesty and discourse.

THE COURT:  All right.  Thank you, very much.  Would you go back and rejoin the other jurors?

The record will reflect the juror has left the courtroom.

Based on what the juror has told us the Court finds no reason to take any action regarding the matter.  The juror has said she didn't learn anything of significance from what her daughter told her.  So, there's no emotional reaction that her daughter told her.  She doesn't have any agenda in this case because of what her daughter told her.  So, the Court finds that she can do what she says she can do, which is be fair and impartial and confine herself to what is presented during the trial.

. . .

MR. KAUFMAN:  Your Honor, I would like the record to reflect that at this time we would move for a mistrial based on the grounds that the juror has information from the time of the event extraneous.  Whether it is relevant or irrelevant, the Court hasn't been able to necessarily rule on this with the juror, but we are asking for a mistrial, and I don't want to waive that record in any way, shape or form.

THE COURT:  Fine, we note your position on the matter, but we deny your request.

Jan. 14, 1997, Transcript of Proceedings at 2-8.  Mr. Bradley's counsel renewed his motion at

the close of the evidence.  The trial judge denied the renewed motion, stating,

> [a]s the Court noted at the time when we were considering the juror, what the juror was saying when asked was that she didn't

> learn anything of any significance from her daughter as a result of her daughter being present that evening.
>
> Secondly, the juror assured us that she would focus on what was presented to her during the trial, and not be affected by anything else.
>
> So, the Court is not persuaded that the juror is tainted in any regard.  It is a coincidence that a member of her family was at the location on the night in question, but the Court finds from what she told us that it has no significance in the matter, so the motion is denied.

Jan. 15, 1997, Transcript of Proceedings at 131-32.

Mr. Bradley acknowledged on direct appeal that "nothing in the record suggests that the nondisclosure was anything but inadvertent."  (#8-2 at 17).  He nonetheless argues that Ms. Wiggins was a biased juror because "[w]e can only assume" that she had ongoing communications with her daughter about the incident during the course of the trial.  Reply [#36] at 3.  Mr. Bradley is not entitled to habeas relief based on his pure speculation that the juror spoke with her daughter about the event during the trial, which would have been in direct violation of the judge's instruction that jurors refrain from speaking to others about the case during the trial.  *See Smallwood v. Gibson*, 191 F.3d 1257, 1280 n.14 (10th Cir. 1999); *see also* Jan. 13, 1997, Transcript of Proceedings at 146-148.

Relying on state law, the Colorado Court of Appeals determined on direct appeal that the trial court had not abused its discretion in denying the motion for mistrial based on Ms. Wiggins' assurances of impartiality.  The court noted that "the juror's daughter had no contact, direct or indirect, with defendant.  Her presence at the shooting, which may or may not have been the one at issue, had minimal, if any, emotional impact on the juror."  Thus, "no factors existed which inherently produced prejudice."  (#8-5 at 5-6).  Again, on habeas review, the state court's

14

determination of actual juror bias is a factual one entitled to a presumption of correctness.  *See*

*Patton,* 467 U.S. at 1036-37.  Mr. Bradley has failed to rebut that presumption with any evidence

that Ms. Wiggins was actually biased against him.  Ms. Wiggins expressly stated that she

believed that she could be an impartial juror.  The record reasonably supports the trial court's

factual finding of no actual juror bias.

To the extent that Mr. Bradley's claim also alleges implied juror bias, Ms. Wiggins did

not have "such a close connection to the circumstances at hand that bias must be presumed."

*Gonzales*, 99 F.3d at 987 (quoting *Scott*, 854 F.2d at 699).  Ms. Wiggins was not present at the

shooting.  Her daughter relayed little to her about the event, and did not describe any of the

participants.  Ms. Wiggins did not state with certainty that the shooting which her daughter

witnessed was even the same one at issue in the trial.  The daughter had not been injured, and

Ms. Wiggins stated that the event did not "freak [her] out," adding, "it is just what happens."

Ms. Wiggins was sufficiently removed from the event described by her daughter such that the

implied bias doctrine cannot apply.  The state court's decision does not contradict clearly

established federal law, and, accordingly, habeas relief is not warranted on the second claim.

### 3.  Ineffective Assistance Based on Failure to Consult with Ballistics Expert

Although no gunshot residue was found on Mr. Bradley's hands, an expert witness for

the prosecution testified at trial that shots from the type of gun used in the crime rarely leave

residue.  In his third claim, Mr. Bradley asserts that his trial attorney provided ineffective

assistance by failing to consult a ballistics expert to counter that testimony.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee

criminal defendants the effective assistance of counsel.  *Strickland v. Washington*, 466 U.S. 668,

706 (1984) (Marshall, J., dissenting).  A claim of ineffective assistance of counsel has two components:

> [f]irst, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 688.

"[T]he proper standard for attorney performance" under the first prong of *Strickland* "is that of reasonably effective assistance."  *Id.* at 687.  Thus, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 687-88.

> [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.  There are countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 688 (internal quotation marks and citations omitted).  "The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.  *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003).

The "pivotal question" on habeas review of a claim of ineffective assistance of counsel "is whether the state court's application of the *Strickland* standard was unreasonable.  This is

different from asking whether defense counsel's performance fell below *Strickland*'s standard." *Harrington*, 131 S. Ct. at 785.  Otherwise, the analysis would be no different than adjudication of an ineffective assistance claim on direct review.  *Id.*  Because "an *unreasonable* application of federal law is different from an *incorrect* application of federal law," *id.* (quoting *Williams*, 529 U.S. at 410), "[a] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."  *Id.*

The Colorado Court of Appeals concluded that Mr. Bradley's counsel's failure to consult a ballistics expert fell within the range of professionally competent assistance and thus did not constitute ineffective assistance under *Strickland*.  The court noted that Mr. Bradley's counsel testified at the postconviction hearing that he did not call a ballistics expert because doing so would have allowed the prosecution to refute the expert's testimony.  The court also noted that much of counsel's closing argument focused on the lack of gunpowder residue found on Mr. Bradley.  (#8-14 at 17).

"It can be assumed that in some cases counsel would be deemed ineffective for failing to consult or rely on experts, but even that formulation is sufficiently general that state courts would have wide latitude in applying it."  *Harrington*, 131 S. Ct. at 789.  *Strickland* does not require "for every prosecution expert an equal and opposite expert from the defense."  *Id*. at 791.  "In many instances cross-examination will be sufficient to expose defects in an expert's presentation.  When defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict."  *Id.*

On cross-examination of the prosecution's expert, Mr. Bradley's counsel endeavored to characterize gunshot reside evidence as generally "unreliable and inconclusive."  Jan. 15, 1997,

Transcript of Proceedings at 63.  He then emphasized repeatedly in his closing statement that no gunshot residue had been found on Mr. Bradley.  Jan. 16, 1997, Transcript of Proceedings (Closing Arguments) at 26-30.  "Counsel was entitled to formulate a strategy that was reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies." *Harrington,* 131 S. Ct. at 789.   The record reflects that Mr. Bradley's counsel determined that presenting a ballistics expert carried certain risks, and thus elected to address the residue issue differently.  The state court's conclusion that Mr. Bradley's strategy was not deficient under *Strickland* was "well within the bounds of a reasonable judicial determination."  *Id.* at 789.

Further, Mr. Bradley has not demonstrated a reasonable probability that the outcome of the trial would have been different had his attorney consulted a ballistics expert, under the second prong of *Strickland*.  Speculation that another expert could have provided sworn testimony contradicting that of the prosecution's expert is insufficient.  *See U.S. v. Boone*, 62 F.3d 323, 327 (10th Cir. 1995).  Even if such testimony were available, Mr. Bradley has not shown that the testimony would have had a reasonable likelihood of affecting the jury's verdict in light of the totality of the evidence, which included eyewitness testimony that Mr. Bradley had taken a gun from his car and shot it outside of the bar, and evidence that the shell casings found in Mr. Bradley's car and the shell casings found at the crime scene came from the same gun. Jan. 13, 1997, Transcript of Proceedings at 14, 17, 102; Jan. 15, 1997, Transcript of Proceedings at 57.  Because the state court's conclusion was not contrary to or an unreasonable application of *Strickland*, habeas relief is not warranted on the third claim.

### 4.  Ineffective Assistance Based on Failure to Suppress Unrelated Gun

Mr. Bradley asserts in his fourth claim that his trial counsel provided ineffective

assistance by not moving to suppress the gun found in Ms. Batts' purse, which the prosecution

conceded was not the gun fired at Pink E's bar.  The Court of Appeals concluded that Mr.

Bradley's counsel acted appropriately under *Strickland* by not bringing a motion to suppress

because the gun was the subject of a separate charge against Mr. Bradley for possession of a

defaced firearm, and, therefore, any motion to suppress the gun would have been denied.  The

Court of Appeals' conclusion was "well within the bounds of a reasonable judicial

determination," *Harrington,* 131 S. Ct. at 789, since it is apparent that a motion to suppress

could not have succeeded due to the defaced firearm charge.   Further, because any motion to

suppress the gun would have been futile, Mr. Bradley cannot show that but for his counsel's

failure to assert the motion, "the result of the proceeding would have been different."  *Strickland*,

466 U.S. at 694.  Because the state court's conclusion was consistent with *Strickland*, habeas

relief is denied on the fourth claim.

### 5.   Ineffective Assistance Based on Failure to Call Witness

In his fifth claim, Mr. Bradley alleges that his attorney's failure to call Ms. Batts as a

witness constituted ineffective assistance of counsel.  He asserted in the state court proceedings

that Ms. Batts "would have been able to testify that Mr. Bradley did not shoot the pistol at

PinkE's that night."  (#8-12 at 8-9).

In affirming the trial court's denial of Mr. Bradley's Colo. R. Crim. P. 35(c) motion, the

Colorado Court of Appeals stated:

> [a]t the hearing on Bradley's motions for postconviction relief,
> Kaufman testified that he made a strategic decision not to call
> Batts as a witness because she was "spun," meaning that the jury

> probably would not have found her credible.[2]  Kaufman
> additionally testified that because Batts had criminal charges
> pending against her for the Pink E's Bar incident, her attorney
> probably would not have permitted her to testify.  We therefore
> conclude Kaufman's decision not to call Batts fell within the
> province of trial strategy and did not constitute ineffective
> assistance.

(#8-14 at 18-19).  The Court of Appeals reasonably applied the *Strickland* standard in

concluding that counsel's decision not to call Ms. Batts did not constitute ineffective assistance.

"[I]nformed 'strategic or tactical decisions on the part of counsel are presumed correct, unless

they were completely unreasonable, not merely wrong.'"  *Anderson v. Attorney Gen. of Kansas*,

425 F.3d 853, 859 (10th Cir. 2005) (quoting *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir.

2002)).  The defendant bears "the burden of showing that counsel's action or inaction was not

based on a valid strategic choice."  *Bullock*, 297 F.3d at 1047.  Here, Mr. Bradley has made no

showing that his attorney's decision not to call Ms Batts based on his determination that she

lacked credibility was not a valid strategic choice.  Further, Mr. Bradley has not demonstrated

that the result of the proceeding would have been different had Ms. Batts testified.  *See*

*Strickland*, 466 U.S. at 688.  The state court's conclusion was not contrary to, or an unreasonable

application of, clearly established federal law.

### 6.  Ineffective Assistance Based on Failure to Investigate

In his sixth claim, Mr. Bradley asserts that his attorney provided ineffective assistance by

failing to adequately investigate the circumstances concerning juror Wiggins' daughter.

Specifically, Mr. Bradley alleges that:

---

[2]The slang term "spun" means "under the influence of methamphetamines," "extremely
inebriated," or "severely under the influence of hallucinogens, e.g. LSD or mushrooms."
http://onlineslangdictionary.com/meaning-of/spun.

had his attorney asked the court to allow the juror to complete certain statements, and had his attorney took [sic] the time to thoroughly investigate whether the jurors [sic] daughter was describing the incident Defendant was on trial for, defense counsel would have found out that:  (1) It was in fact the same incident (2) the jurors [sic] daughter was a victim of the offense, and (3) that before the shooter "peeled out" the daughter got a glimpse of the occupants of the car and Defendant was not one of them.  Defense counsel's failure to investigate and thereby effectively protect his clients [sic] interests allowed the mother of a victim/witness to sit on the jury and denied Defendant the opportunity to utilize the juror's daughter as a defense witness.  At no time did defense counsel make an attempt to contact the daughter.

(#2 at 8-9).

Mr. Bradley did not present this claim in state court.  On his direct appeal, he contended that the trial court erred in denying his motion for mistrial based on Ms. Wiggins' alleged bias. On his Colo. R. Crim. P. 35(c) appeal, he argued that his counsel rendered ineffective assistance by "fail[ing] to request and pursue a challenge for cause" of juror Wiggins and by making "no objection" to her continued service as a juror.  (*See* #8-10 at 29-30).[3]  The present claim, on the other hand, alleges that Mr. Bradley's counsel provided ineffective assistance by failing to adequately *investigate* the circumstances of Ms. Wiggins' daughter's involvement, not only for purposes of supporting an assertion of juror bias, but also for purposes of potentially calling the daughter as a defense witness.  The claim on direct appeal was not an ineffective assistance claim, and the claim on the Rule 35(c) appeal did not allege a failure to investigate.  Because the substance of the sixth claim has never been presented to the state courts, the claim has not been exhausted.  *See Picard v. Connor*, 404 U.S. 270, 278 (1971) ("the substance of a federal habeas

---

[3]The Court notes that (1) Ms. Wiggins could not have been challenged for cause because she already had been sworn in as a juror when she raised the issue concerning her daughter, and (2) Mr. Bradley's counsel did in fact assert a motion for mistrial based on Ms. Wiggins' statements.

corpus claim must first be presented to the state courts); *Fairchild v. Workman*, 579 F.3d 1134, 1147 (10th Cir. 2009) (habeas claim unexhausted where the "substance of the [habeas] claim . . . presented in federal court differs materially from that . . . presented in state court.").

If a habeas petitioner has not exhausted his or her state remedies, the petition generally is denied without prejudice so that it may be presented to the state court. *See Coleman v. Thompson*, 501 U.S. 722, 731 (1991). However, if "the court to which the petitioner would be required to present his claim in order to meet the exhaustion requirement would now find the claims procedurally barred," then the claim is procedurally defaulted and habeas review is precluded. *Id.* at 755 n.1. Here, Mr. Bradley's sixth claim would be denied in state court as successive under Colo. R. Crim. P. 35(c)(3) because it could have been presented in an appeal or postconviction proceeding previously brought. *See* Colo. R. Crim. P. 35(c)(3)(VII). Because Mr. Bradley has not demonstrated "cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that the failure to consider the claim[ ] will result in a fundamental miscarriage of justice," the Court does not address the defaulted claim. *Coleman*, 501 U.S. at 724. Accordingly, the sixth claim properly is dismissed.

## **CONCLUSION**

For the foregoing reasons, the Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Application") (#2) is DENIED. The Court has *sua sponte* considered whether any of Mr. Bradley's contentions warrant the issuance of a Certificate of Appealability pursuant

to 28 U.S.C. § 2253(a).  Having considered the standards of *Slack v. McDaniel*, 529 U.S. 473,

484 (2000), the Court finds that Mr. Bradley has not made a substantial showing of the denial of

a constitutional right such that reasonable jurists could disagree as to the disposition of his

application.  28 U.S.C. § 2253(c)(2).  Accordingly, the Court also denies a certificate of

appealability.

Dated this 2nd day of June, 2011

BY THE COURT:

Marcia S. Krieger
United States District Judge